**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA      :

     :

v.      :  Civil No. WMN-05-0053

     :  Crim. No. WMN-07-2858

DONTE BROWN      :

**MEMORANDUM**

On July 7, 2005, Defendant Donte Brown pled guilty to two
counts of a three count indictment: Robbery (Count I) and
Possession of a Firearm in Furtherance of a Crime of Violence
(Count III).  The third count, Felon in Possession of a Handgun
(Count II) was dismissed by the government pursuant to the plea
agreement.  Defendant was sentenced on February 14, 2006, to a
term of 300 months, 216 months as to Count I and 84 months as to
Count III, to run consecutively.  Defendant appealed and the
Fourth Circuit affirmed Defendant's sentence.  United States v.
Brown, 203 Fed. App'x 490 (4th Cir. 2006).

Defendant has now filed a motion to vacate, set aside, or
correct his sentence pursuant to 28 U.S.C. § 2255.  In this
motion, Defendant argues that his counsel was ineffective in two
ways.  First, Defendant asserts that his counsel "induced [him]
to enter a guilty plea on the promise that counsel would
collaterally attack movant's prior state convictions so that his
sentence exposure would be significantly lessened . . . ."  Mot.
at 5.  Defendant contends that he would not have pled guilty but
would have gone to trial had counsel not misled him in this
manner.  Second, Defendant argues that counsel was ineffective in

failing to move to have Defendant receive a competency evaluation
from a mental health specialist <u>prior to his pleading guilty</u>.
Defendant was evaluated prior to sentencing, but after entering
his guilty plea, and Defendant argues that, somehow, "the outcome
of his plea proceedings could have been different" had that
assessment preceded the guilty plea.  Reply at 8.  The Court
finds no merit in Defendant's claims and that they should be
dismissed, without a hearing.  <u>See</u> 28 U.S.C. § 2255 (providing
that a hearing is not required where "the motion and the files
and records of the case conclusively show that the prisoner is
entitled to no relief").

        To establish a claim of ineffective assistance of counsel, a
petitioner must show that counsel's performance was
constitutionally deficient to the extent that it fell below an
objective standard of reasonableness, and that he was prejudiced
thereby.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984).
In making this determination, there is a strong presumption that
counsel's conduct was within the wide range of reasonable
professional assistance.  <u>Id.</u> at 689; <u>see also</u> <u>Fields v. Attorney
Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir. 1992).
Furthermore, the petitioner "bears the burden of proving
<u>Strickland</u> prejudice."  <u>Fields</u>, 956 F.2d at 1297.  "If the
petitioner fails to meet this burden, a reviewing court need not
consider the performance prong."  <u>Fields</u>, 956 F.2d at 1297
(citing <u>Strickland</u>, 466 U.S. at 697).  In considering the
prejudice prong of the analysis, the Court may not grant relief

solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhard v. Fretwell, 506 U.S. 364, 369 (1993)).

More critically here, a petitioner who alleges ineffective assistance of counsel following entry of a guilty plea has an even higher burden to meet. In order to satisfy the "prejudice" requirement in this context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 53-57 (1985); see also Fields, 956 F.2d at 1294-99 (same); Slavek v. Kinkle, 359 F. Supp. 2d 473, 491 (E.D. Va. 2005) (summarily rejecting claims of ineffectiveness on prejudice prong based on petitioner's failure and inability to argue that but for alleged errors, he would have insisted on trial or entered a different guilty plea). Courts have stated that this inquiry is an "objective one based on whether going to trial might reasonably have resulted in a different outcome." Martin v. United States, 395 F. Supp. 2d 326, 329 (D.S.C. 2005) (citing Hill, 474 U.S. at 59-60). See also Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses, petitioner could not establish prejudice under the modified "reasonable probability" standard); and Burket

3

v. Angelone, 208 F.3d 172, 190-91 (4th Cir. 2000) (same).  In
addition, Courts consider the nature of the plea bargain -
whether it is favorable to a defendant and therefore, accepting
it was a reasonable decision - as evidence of the "voluntary and
intelligent" nature of the plea.  Fields, 956 F.2d at 1299.

Finally, in evaluating post-guilty plea claims of
ineffective assistance, statements previously made under oath
during the plea proceedings are deemed binding in the absence of
"clear and convincing evidence to the contrary."  Fields, 956
F.2d at 1299 (citing Blackledge v. Allison, 431 U.S. 63, 74-75
(1977)).  Moreover, statements made during Rule 11 proceedings
constitute strong evidence of the voluntariness of a defendant's
plea.  United States v. DeFusco, 949 F.2d 114, 119 (4th Cir.
1991).

Defendant's first claim of ineffective assistance of
counsel, i.e., that he was induced to enter a guilty plea "on the
promise that counsel would collaterally attack [Defendant's]
prior state convictions," fails, first and foremost, for the
reason that it is at odds with Defendant's own sworn statements
at his rearraignment.  At Defendant's Rule 11 hearing, the Court
went over, in some detail, what factors would be considered in
computing Defendant's sentence.  The Court explained the
statutory maximum sentence for the robbery charge was 20 years,
and that the possession of a firearm in furtherance of a crime of
violence carries a maximum penalty of life imprisonment and
mandatory minimum of 7 years, running consecutive to the robbery

sentence.  July 7, 2005, Tr. at 6.  Citing the plea agreement,
signed by Defendant, the Court noted that, while the government
contended that Defendant was a career offender, Defendant
reserved the right to argue otherwise.  Id. at 11.  The parties
also stipulated in the plea agreement, and the Court noted in the
plea proceedings, that Defendant could argue for over-
representation of his criminal history.  Id.  The Court then
noted, also per the plea agreement, that no new adjustments, no
offense characteristics or guideline factors or departures would
be brought up at sentencing.  Id.

After going over the contents of the plea agreement with
Defendant, the Court inquired if Defendant had questions about
anything in the agreement, or anything that was said about the
agreement, to which Defendant responded, "No."  Id. at 13.  The
Court specifically inquired, "Are you entering a guilty plea to
these two counts . . . because someone has promised you
something other than what's in this agreement?" to which
Defendant responded, "No."  Id.  Defendant then testified that he
was pleading guilty because he was, in fact, guilty and finally,
he responded negatively when asked if he had "any questions about
anything we've talked about in regard to entering these pleas or
have not talked about that you have a question about."  Id. at
14.

In addition to acknowledging, under oath, that he was not
pleading guilty based upon any promise made to him outside of the
written plea agreement, Defendant acknowledged that the following

facts were "essentially true."  On August 4, 2004, Defendant entered an Exxon gas station brandishing a handgun and demanding that the gas station employee give him money from the cash register.  The employee refused and began to fight with Defendant.  While they were struggling, a Baltimore City Sheriff happened to enter the station and helped subdue Defendant.  Once subdued, Defendant was arrested.  Id. at 13-14.  Thus, Defendant was caught in the act of committing the robbery by a law enforcement officer.  In his reply memorandum, Defendant expressed his own recognition that the government's case against him was "overwhelming."  Reply at 3 n.2.

Defendant seeks to undermine the reasonableness of the plea agreement and bolster his current claim that he would not have pled guilty absent his counsel's promise to collaterally attack his state convictions by noting that "by pleading guilty [he] only lowered his sentence by approximately three (3) years." Id.; see also id. at 7 ("the sentence movant would have received following a jury trial, if convicted is not remarkably different than the one he received after pleading guilty.  Therefore, it cannot be said that movant's guilty plea was advantageous.") Three years, however, is three years and in light of the overwhelming evidence and concomitant certainty of conviction, the Court cannot conclude that Defendant received no benefit from the plea agreement.

The only argument proffered by Defendant concerning any possible defense he might have advanced at trial is the

following: "movant could have proceeded to trial on a diminished
capacity defense, and the jury could have very well had sympathy
on movant and choose to acquit on one or both charges, or a
lesser included offense."  Reply at 6.  The Fourth Circuit has
held, however, that "diminished capacity" was abolished as a
defense by the enactment of 18 U.S.C. § 17.  United States v.
Hood, 857 F.2d 1469 (Table)(4th Cir. Aug. 3, 1988).  In the
Fourth Circuit, "mental abnormality, apart from establishing an
insanity defense, may only be admitted in the very narrow
circumstances where the trial judge concludes that it will negate
specific intent or other mens rea."  United States v. Robinson,
804 F. Supp. 830, 832 (W.D. Va. 1992); see also United States v.
Worrell, 313 F.3d 867, 872 (4th Cir. 2002) ("The language of [18
U.S.C. § 17] leaves no room for a defense that raises any form of
legal excuse based upon one's lack of volitional control
including a diminished ability or failure to reflect adequately
upon the consequences or nature of one's actions.") (internal
quotations omitted).  The mental health evaluation to which
Defendant did submit does not support that degree of mental
impairment and, thus, the Court would not admit the evidence that
Defendant believes would have invoked juror sympathy.

    As to Defendant's second ineffective assistance claim, i.e.,
that counsel should have sought a mental health evaluation and
competency hearing prior to his entering a guilty plea, the Court

has difficulty even understanding his claim of prejudice.  In arguing that the outcome of the plea proceedings could have been different, the only alternative outcome he identifies is that "movant could have received a binding plea with a cap that could have been much lower than the sentence he received."  Reply at 8. Why that result would have followed from an earlier evaluation is unclear.  The Court considered the report from the mental health evaluation which Defendant was given and, while acknowledging that Defendant "certainly has been damaged by that neglect, by sexual abuse, substance abuse and just an overall deplorable upbringing," nonetheless concluded that the seriousness of the particular matter before the Court and Defendant's danger to society evidenced by his past conduct, warranted the sentence that the Court imposed.  Feb. 14, 2006, Tr. at 17.  There is no reason to believe that, had the results of the mental health evaluation been available before the plea agreement was completed, the government would have offered an agreement any more favorable to Defendant.

For the reasons stated, the Court will deny Defendant's motion to vacate, set aside, or correct his sentence.  A separate order will issue.

/s/

William M. Nickerson
Senior United States District Judge

8

Dated: October 29, 2008